IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

VIKKI GRAHAM,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )          CASE NO. CV411-316
                                       )
MEMORIAL HEALTH UNIVERSITY             )
MEDICAL CENTER, KATHY BROWNE,          )
DEBBIE HATTRICH, SOPHRONIA             )
MCCLENDON and RHONDA COXON,            )
                                       )
        Defendants.                    )
_____)

## O R D E R

Before the Court is Defendants' Motion for Summary
Judgment.  (Doc. 27.)  Plaintiff has filed a response in
opposition.  (Doc. 36, Attach. 2.)  For the following
reasons, Defendants' motion is **GRANTED IN PART** and **DENIED
IN PART.**  Plaintiff's claims against Defendant Memorial
Health University Medical Center for a hostile work
environment and retaliation unrelated to her termination
under Title VII of the Civil Rights Act of 1964 and 42
U.S.C. § 1981 are **DISMISSED.**  Plaintiff's claims against
Defendants Kathy Browne and Debbie Hattrich for a hostile
work environment and retaliation unrelated to her
termination under § 1981 are **DISMISSED.**  As to Defendants
Sophronia McClendon and Rhonda Coxon, Plaintiff's § 1981
claims of hostile work environment, disparate treatment and

retaliation are **DISMISSED**.  However, Plaintiff's remaining claims against Defendant Memorial Health University Medical Center of disparate treatment and retaliatory termination under Title VII and § 1981, as well as her claims of disparate treatment and retaliatory termination against Kathy Browne and Debbie Hattrich under § 1981, will proceed to trial.

## BACKGROUND

This case involves allegations of a racially discriminatory hostile work environment, disparate treatment with regard to discharge, and retaliation. Plaintiff Vikki Graham ("Plaintiff"), a white female, worked at Memorial Health University Medical Center ("Memorial") as a Registered Nurse for a number of years, most recently from 2005 until her termination on November 19, 2009.  (Doc. 1 ¶¶ 16-17.)  During this period, Plaintiff worked in the Operating Room ("OR"), first on the 11 a.m. to 11 p.m. cross-over shift, and later on the 7 a.m. to 7 p.m. day shift.  (Id. ¶ 22.)

Plaintiff made numerous complaints of harassment by Defendants Sophronia McClendon ("McClendon") and Rhonda Coxon ("Coxon"), both African-American females.  (Doc. 36, Attach. 2 at 3.)  McClendon and Coxon acted as Charge Nurses to Plaintiff, positions which involve some

2

supervisory authority, but do not have termination powers. (Doc. 36, Attach. 2 at 6.) Plaintiff contends that, beginning in 2006 through January of 2009 she was subject to continual harassment by McClendon and Coxon in the form of "yelling and screaming at [Plaintiff], requesting assistance and then refusing it from [Plaintiff], unwarranted warnings and threats, intensive and unnecessary oversight of [Plaintiff's] work, and overloading [Plaintiff] with work." (Id.) Plaintiff alleges that African-American staff members were not subject to similar harassment. (Id. at 8.)

Plaintiff first complained of harassing conduct directly to McClendon and Coxon, but the harassment did not cease. (Id. at 3.) She then complained to her Nurse Manager, defendant Kathy Browne ("Browne"), but was similarly unsuccessful. (Id. at 9-10.) On November 25, 2008, Plaintiff complained to Human Resources ("HR") about McClendon and Coxon's conduct and believes she may have described it as a "hostile work environment." (Id. at 10.)

Plaintiff alleges an incident of harassment occurred following a December 8, 2008 HR meeting involving Plaintiff, Browne, and Assistant Nurse Manager Rene Hitt, regarding Plaintiff's harassment by McClendon and Coxon. Browne allegedly accused Plaintiff of undermining her and

expressed displeasure that Plaintiff had complained to HR. (Id. at 11.)  The next day, Plaintiff alleges McClendon stated to her that "[y]ou're not the only one who can go to HR." (Id. at 7.)  In addition, Plaintiff suggested to McClendon, who was trying to remember a phone number, that it was "598-something," to which McClendon allegedly responded "I know what 598 is, people of color live at the Landings too, you know." (Id.)  Both Defendants Browne and Perioperative Services Director Debbie Hattrich ("Hattrich") were informed of the incident.  (Id. at 12.)

On January 20, 2009, Plaintiff was informed that she would be involuntarily transferred from her preferred cross-over shift to the lower-paying day shift.  (Id. at 13.)  Plaintiff did not work with McClendon or Coxon after the transfer took place, but was unable to transfer from the day shift.  (Id. at 23.)

In March of 2009, Plaintiff complained to HR and the Ethics Office of past harassment and what she believed to be retaliation for making complaints.  (Id. at 17.) Plaintiff does not remember whether she mentioned race or discrimination in her complaints, but alleges that general racial tension within the department was well known.  (Id. at 20.)  On November 3, 2009, she made a second complaint in a meeting with Ethics Office personnel, specifically

alleging that she was the victim of racial discrimination and retaliation. (Id. at 29.)

On the same day of her meeting, in what Defendants argue was a violation of hospital policy, Plaintiff left an unfrozen cryovein—a type of human tissue graft used in medical procedures—in its unopened package on a secretary's desk after it was not used in surgery. (Doc. 27 at 26.) Plaintiff alleges she was only following instructions. (Doc. 36, Attach. 2 at 26.) Ten days later, on November 13, 2009, Defendants allege that Plaintiff, in a violation of hospital policy, left an operation before a relief count[1] was performed. (Doc. 27 at 30.) In response, Plaintiff alleges that she remained in the room while the count was performed and that no violation of policy occurred. (Doc. 36, Attach. 2 at 27.)

Citing the cryovein and count policy incidents, Plaintiff was terminated by Hattrich in a meeting including Browne and HR officer Angie Carroll ("Carroll"). (Doc. 27 at 31.) Thereafter, Plaintiff filed a complaint of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 30, 2009 and received a

---

[1] While it is not explained in either brief, the Court understands that a relief count is a surgery practice whereby sponges or medical devices are counted prior to completion of the surgery to ensure that no objects are left inside the patient.

5

right-to-sue letter mailed on September 27, 2011. (Doc. 1 ¶ 6.)

Plaintiff subsequently filed her complaint in this court on December 23, 2011. (Doc. 1.) In her complaint, Plaintiff alleges claims of hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e §§ 2000e to 2000e-17 and the Civil Rights Act of 1866, 42 U.S.C. § 1981. (Id. ¶¶ 71, 77.) Plaintiff also alleges claims of disparate treatment under Title VII and § 1981. (Id. ¶¶ 85, 93.) Lastly, Plaintiff alleges claims of retaliation under Title VII and § 1981. (Id. ¶¶ 99, 105.)

On November 15, 2012, Defendants filed their Motion for Summary Judgment. (Doc. 26.) In their brief, Defendants argue that Plaintiff's claims of a hostile work environment fail because the conduct of McClendon and Coxon was not motivated by race (Doc. 27 at 37) and was not severe enough to warrant relief (id. at 41). Defendants further argue that Plaintiff cannot make a prima facie showing of retaliation for conduct occurring before November 3, 2009 because Plaintiff had not then engaged in protected activity. (Id. at 44.) Defendants also argue that Plaintiff cannot make a prima facie showing of retaliatory termination because the decision-makers did not

know of Plaintiff's complaints of racial discrimination. (Id. at 46-47.)   In addition, Defendants argue that Plaintiff was legitimately terminated for non-discriminatory reasons. (Id. at 47-48.)   Defendants also argue that Plaintiff's Title VII claims of hostile work environment against Memorial are time barred because she failed to file a claim with the EEOC within 180 days of the alleged wrongful conduct and that her retaliation claims similarly fail for conduct occurring before June 3, 2009. (Id. at 35, 36.)   Defendants lastly argue that McClendon and Coxon are not proper defendants under § 1981 for either disparate treatment or retaliation. (Id. 36.)

In her response, Plaintiff argues that the harassment was racially motivated and sufficiently severe to warrant relief. (Doc. 36, Attach. 2 at 37, 39.)   Plaintiff argues that her complaints prior to November 3, 2009, are protected activity and thus her transfer constitutes retaliation. (Id. at 46.)   Plaintiff also argues that the decision-makers were aware of her complaints of racial discrimination and that the reasons cited for her termination are mere pretext. (Id. at 48-49.)   Plaintiff admits that her Title VII claims against Memorial for hostile work environment and retaliation prior to June 3, 2009 are time barred, therefore these claims are dismissed.

(Id. at 32-33.)   Also, Plaintiff admits that McClendon and Coxon are not proper defendants under § 1981 for retaliation or disparate treatment and, as a result, these claims are dismissed.  (Id. at 34.)

**ANALYSIS**

I.   SUMMARY JUDGMENT STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought."  Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that partys case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The substantive law governing the action

determines whether an element is essential.  <u>DeLong Equip.</u>
<u>Co. v. Wash. Mills Abrasive Co.</u>, 887 F.2d 1499, 1505 (11th
Cir. 1989).

> As the Supreme Court explained:

>> [A] party seeking summary judgment always bears the
>> initial responsibility of informing the district
>> court of the basis for its motion, and identifying
>> those portions of the pleadings, depositions, answers
>> to interrogatories, and admissions on file, together
>> with the affidavits, if any, which it believes
>> demonstrate the absence of a genuine issue of
>> material fact.

<u>Celotex</u>, 477 U.S. at 323.  The burden then shifts to the
nonmovant to establish, by going beyond the pleadings, that
there is a genuine issue as to facts that are material to
the nonmovant's case.  <u>Clark v. Coats & Clark, Inc.</u>, 929
F.2d 604, 608 (11th Cir. 1991).

> The Court must review the evidence and all reasonable
factual inferences arising from it in the light most
favorable to the nonmovant.  <u>Matsushita</u>, 475 U.S. at 587-
88.  However, the nonmoving party "must do more than simply
show that there is some metaphysical doubt as to the
material facts."  <u>Id.</u> at 586.  A mere "scintilla" of
evidence, or simply conclusory allegations, will not
suffice.  <u>See, e.g.,</u> <u>Tidwell v. Carter Prods.</u>, 135 F.3d
1422, 1425 (11th Cir. 1998).  Nevertheless, where a
reasonable fact finder may "draw more than one inference

from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II.  PROPER DEFENDANTS

Defendants argue that the four individual defendants are improper defendants for all claims under Title VII. (Doc. 27 at 36.)  However, as Plaintiff correctly points out in her response, the complaint does not seek relief from any individual defendant under Title VII.  (Doc. 36, Attach. 2 at 34.)  As no such claims exist, no further action is required by this Court.

In addition, Defendants argue that McClendon and Coxon are not proper defendants with regard to Plaintiff's § 1981 claims of disparate treatment and retaliation.  (Doc. 27 at 36.)  In her response, Plaintiff concedes that McClendon and Coxon are not liable under either count.  (Doc. 36, Attach. 2 at 34.)  A supervisor who does not participate in the decision to terminate an employee may not be held liable in a § 1981 discriminatory termination action.  See Burstein v. Emtel, Inc., 137 F. App'x 205, 208 (11th Cir. 2005).  In their roles as Charge Nurses, neither McClendon nor Coxon participated in the decision to transfer Plaintiff to a different shift or ultimately terminate her

employment. Consequently, they are not proper defendants under § 1981 for either disparate treatment or retaliation and these claims must be dismissed. However, McClendon and Coxon are considered proper defendants for Plaintiff's § 1981 hostile work environment claim.

## III. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff's complaint alleges she was subject to a racially hostile work environment under Title VII and § 1981, but admits that her Title VII claim is time barred. (Doc. 36, Attach. 2 at 32.) Consequently, Plaintiff's Title VII claim against Memorial is hereby dismissed and only her § 1981 claim remains. However, the analyses for a racially hostile work environment under Title VII and § 1981 are identical. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that claims under § 1981 are analyzed under the Title VII framework). To establish a hostile work environment claim, the Plaintiff must prove the following:

> (1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Bryant v. Jones 575 F.3d 1281, 1296 (11th Cir. 2009) (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).

The facts of this case clearly satisfy the first and second elements of a prima facie hostile work environment. Plaintiff is white and she suffered some level of workplace harassment at the hands of McClendon and Coxon. As to the fifth element, an employer "is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). When an employee has established a claim for vicarious liability but where no tangible employment action was taken, as is the case here, a defending employer may raise an affirmative defense to liability or damages by showing, "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. Here, Defendants do not make such an affirmative defense.

As such, Defendants' motion for summary judgment naturally focuses on elements three and four.

As to whether the harassment was based on a protected characteristic of the employee, the Court is unable to conclude that the conduct of McClendon and Coxon was racially motivated. Plaintiff cites only one instance where McClendon made a comment referencing race to Plaintiff. McClendon, an African-American, stated that "I know what 598 is, people of color live at the Landings too, you know," in response to Plaintiff, who is white, stating her belief that a phone number was "598-something." While this isolated comment may have been racially offensive, it does not establish that the remainder of McClendon and Coxon's conduct was racially motivated. Indeed, no other instances of the alleged harassment involved any reference to Plaintiff's race at all. For instance, the yelling and screaming of which Plaintiff complains did not contain racial epithets or other derogatory references.

Further, although Plaintiff alleges that there was general knowledge of racial tensions among the OR staff (Doc. 36, Attach. 2 at 38), such tension is not grounds to conclude that the specific harassing conduct committed by McClendon and Coxon was based on Plaintiff's race. Disrespectful, unprofessional, and harassing conduct will

not suffice to show a hostile work environment unless a link between that conduct and Plaintiff's status in a protected category can be shown. <u>Turner v. Ga. Sec'y of State</u>, 848 F. Supp. 2d 1361, 1381 (M.D. Ga. 2012). An isolated racial comment, without more, does not prove racial motivation for all other conduct. In fact, comments and conduct that do not reference race are generally not considered in a hostile work environment claim. <u>See Reeves v. DSI Sec. Servs., Inc.</u>, 395 F. App'x 544, 546 (11th Cir. 2010) ("We do not consider statements or conduct that are unrelated to the defendant's race."). Here, because Plaintiff cannot establish a connection between McClendon's comment and the other conduct of which she complains, element three of a hostile work environment fails and summary judgment is appropriate on this claim.

Even if the conduct of McClendon and Coxon was motivated by Plaintiff's race, this Court cannot conclude that it was so severe as to change or alter the conditions of her employment. To satisfy this fourth element for a hostile work environment, the harassment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher</u>, 524 U.S. at 787; <u>see also</u> <u>Miller</u>, 277 F.3d at 1276 (noting

14

that the severity requirement has "both an objective and subjective component"). Courts should consider the totality of the circumstances rather than acts in isolation. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).

A court must look at the following four factors when addressing the objective hostility of the conduct: " '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.' " Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1285 n.12 (11th Cir. 2003) (quoting Mendoza, 195 F.3d at 1246). Additionally, the Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (internal citations and quotations omitted); see also Johnson v. Booker T. Washington Serv. Inc., 234 F.3d 501, 509 (11th Cir. 2000).

The frequency of harassment is complicated by the fact that most of the harassing conduct, as stated above, was not inherently racially offensive. Again, statements

unrelated to the defendant's race do not impact this analysis. <u>Reeves</u>, 395 F. App'x 544, 546 (11th Cir. 2010); <u>see also</u> <u>Baldwin v. Blue Cross/Blue Shield of Alabama</u>, 480 F.3d 1287, 1301-02 (11th Cir. 2007) ("Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category."). From this perspective, the harassment is very infrequent indeed, comprising only one isolated comment in the three years that Plaintiff worked with McClendon and Coxon. Such an isolated incident does not suffice to support a claim of hostile work environment. <u>See, e.g.</u>, <u>Caro v. Miami-Dade Cnty.</u>, 105 F. Supp. 2d 1326, 1329 (S.D. Fla. 2000) (finding one comment referencing plaintiff's race not "pervasive" and thus insufficiently frequent for a hostile work environment claim).

Even if we include facially race-neutral conduct that Plaintiff believes was incurred because of her race, the harassment does not appear particularly frequent. Plaintiff alleges that there were as many as twenty instances of McClendon and as many as ten instances of Coxon yelling or screaming at her over a period of two years. (Doc. 26, Ex. K at 204:15-18, 211:23.) Less

specific conduct in the form of insults, requesting assistance and then refusing it from Plaintiff, or overloading her with work, may have occurred more often. (Doc. 36, Attach. 2 at 6.) However, neither McClendon nor Coxon acted as Charge Nurse to Plaintiff every day, and even on days one of them did act as Charge Nurse, it was not for the entirety of Plaintiff's shift. Thus, this Court must conclude that even including incidents without overt racial statements, harassment occurred with, at worst, only moderate frequency.

As to element two, the severity of the harassment complained of by Plaintiff is insufficient to impose liability on Defendants. Both the Supreme Court and the Eleventh Circuit have noted that a hostile work environment is only implicated where the workplace is " 'permeated with discriminatory intimidation, ridicule and insult,' not where the comments amount to little more than 'mere utterance of an . . . epithet.' " <u>Miller</u>, 277 F.3d at 1276-77 (<u>quoting</u> <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)). Here, the vast majority of the actions of which Plaintiff complains are relatively normal workplace gripes common among co-workers that do not get along. Refusing to accept assistance from Plaintiff, overloading her with work, or giving unnecessarily stringent oversight

with no reference or indication that such was because of her race, are not the types harassments that § 1981 was meant to protect against. While the court does not discount the unpleasantness of working in such an environment, the statute does not impose a general civility code. See Wynn v. Paragon Sys., Inc., 301 F. Supp. 2d 1343, 1352 (S.D. Ga. 2004) (holding that Title VII is not "a general civility code"). Rather, "[r]acial slurs spoken by co-workers ha[ve] to be so 'commonplace, overt and denigrating that they create an atmosphere charged with racial hostility.'" Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)).

The one instance involving a racial comment made by McClendon was far milder than what has been found insufficient to maintain a cause of action for hostile work environment. See, e.g., Barrow v. Ga. Pac. Corp., 144 F. App'x 54, 57 (11th Cir. 2005) (finding insufficient severity so as to alter the terms of the working environment despite multiple supervisors calling the plaintiff "nigger," "boy," and "black boy" on multiple occasions over the course of a year as well as threatening to "kick [plaintiff's] black ass"). No racial slurs were ever used against Plaintiff in this case. As far as the

Court can tell, the comment made by McClendon is offensive only in that it serves to suggest Plaintiff herself was racist by insinuating that she (Plaintiff) did not expect an African-American to have knowledge of an affluent area. Such a minor and tangential reference to Plaintiff's race does not suffice for purposes of showing a hostile work environment.   In short, this factor weighs against finding that the harassment was objectively severe.

As to the third element, the allegedly offensive conduct does not appear physically threatening or particularly humiliating.  Again, the lack of references to race in the alleged harassment serves to undermine Plaintiff's claim.   While Plaintiff complains of "unwarranted warnings and threats," there is no indication that such conduct included references to Plaintiff's race. (Doc. 36, Attach. 2 at 40.)   The lone racial comment did not suggest a physical threat and appears more a defensive remark than an attempt to humiliate Plaintiff. Consequently, this factor weighs against finding that the harassment was objectively severe.

As to the fourth element, even if the Court were to conclude that the offensive conduct interfered with Plaintiff's job performance as alleged, the remaining three factors all weigh in favor of finding that the conduct

experienced by Plaintiff was not objectively severe enough to find a hostile work environment. The harassing conduct was simply too infrequent; did not permeate the workplace with discriminatory intimidation, ridicule, and insult; and was not physically threatening or humiliating.

In conclusion, because a reasonable fact-finder could not conclude that harassment was motivated by Plaintiff's race, nor was it severe or pervasive enough to alter the terms and conditions of her employment, Defendants' motion is granted with respect to Plaintiff's § 1981 claim of a hostile work environment.

IV.  PLAINTIFF'S DISPARATE TREAMENT CLAIMS

Plaintiff's complaint alleges disparate treatment under both Title VII and § 1981. As with hostile work environment claims, the analysis for disparate treatment under Title VII and § 1981 is the same and thus, both counts are addressed together. See Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1060 (11th Cir. 1994) ("The [Title VII] scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations."). However, we need not enter a discussion on the merits in this case. Defendants have failed to move for summary judgment as to Plaintiff's disparate treatment

claims.    "A   party   may   move   for   summary   judgment,
identifying   each   claim   or   defense--or   the   part   of   each
claim   or   defense--on   which   summary   judgment   is   sought."
Fed.   R.   Civ.   P.   56(a)   (emphasis   added).    Defendants   are
correct   in   noting   that   "a   hostile   work   environment   claim
and   a   disparate   treatment   claim   are   separate   and   distinct
causes   of   action."    (Doc.   43   at   5.)    As   such,   the   court
will   not   read   Defendants'   general   statements   in   their
original   motion   concerning   the   absence   of   discrimination   as
constituting   a   motion   for   summary   judgment   on   Plaintiff's
disparate   treatment   claims.    Defendant   specifically
identified   only   the   causes   of   action   for   a   hostile   work
environment   and   retaliation.

Neither   Defendants'   motion   for   summary   judgment   (Doc.
26)   nor   their   supporting   brief   (Doc.   27)   mention
Plaintiff's   disparate   treatment   claims.    "It   is   well
settled   in   this   circuit   that   an   argument   not   included   in
the   [movant's]   opening   brief   is   deemed   abandoned."    Davis
v.   Coca-Cola   Bottling   Co.   Consol.,   516   F.3d   955,   972   (11th
Cir.   2008).    As   was   the   case   in   Davis,   Defendants   here
attempt   to   correct   their   mistake   by   introducing   an   argument
in   their   reply.    (Doc.   43.)    However,   "presenting   the
argument   in   the   [movant's]   reply   does   not   somehow   resurrect
it."    Id.   As   there   has   been   no   proper   motion   for   summary

judgment on Plaintiff's disparate treatment claims, they will proceed to trial.[2]

V. PLAINTIFF'S RETALIATION CLAIMS

Plaintiff has brought retaliation claims under § 1981 and Title VII based on Defendants' decisions to transfer her to a different shift and ultimately terminate her employment. (Doc. 1 ¶¶ 99, 105.) Plaintiff admits that liability is not appropriate under Title VII for conduct occurring before June 3, 2009.[3] (Doc. 36, Attach. 2 at 33.) The elements required to establish retaliation under § 1981 are the same as those required under Title VII. See Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the same three-part test for retaliation claims under § 1981 and Title VII).

Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), provides that

[i]t shall be an unlawful employment practice for an employer to discriminate against any

---

[2] The Court notes that, although it will not rule on a motion that was not made, Plaintiff's claim for disparate treatment appears weak at best. Plaintiff has identified only one other possibly similarly situated employee who was not fired for a count policy violation and such employee did not hold the same position as Plaintiff. Other employees with the same position as Plaintiff were terminated for the same offense. (Doc. 36, Attach. 2 at 44.)

[3] The Court reads Plaintiff's statement that retaliation "may not be appropriate" as an admission that it is not. (Doc. 36, Attach. 2 at 33.)

> [employee] . . . because he has opposed any
> practice made unlawful by [42 U.S.C. § 2000e],
> or because he has made a charge, testified,
> assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this
> subchapter.

Retaliation occurs when an employee engages in protected activity, and suffers a materially adverse employment action that is causally related to that activity. See Hopkins v. St. Lucie Cnty. Sch. Bd., 399 F. App'x 563, 566 (11th Cir. 2010); Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998). To establish a prima facie case of retaliation, a plaintiff must show (1) that she engaged in statutorily protected activity; (2) that she suffered a materially adverse employment action; and (3) that there was a causal connection between the two events. McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008) (quoting Cooper v. S. Co., 390 F.3d 696, 740 (11th Cir. 2004). Should a plaintiff establish a prima facie case of retaliation, "the employer has the burden of articulating a legitimate non-discriminatory reason for the challenged employment decision." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999). The plaintiff must then demonstrate that the proffered non-discriminatory reason can be shown at trial to be mere pretext for

unlawful retaliation.   Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997).

A. Claims Before November 3, 2009

As it is the first step in our analysis, this Court must determine if Plaintiff has established a prima facie case of retaliation.   Defendants allege that Plaintiff did not engage in protected activity before November 3, 2009. (Doc. 27 at 44.)   If such is the case, then none of the adverse employment actions of which Plaintiff complains, with the exception of her termination, are actionable.

Statutorily protected activity must include, at the very least, an employee's communication to the employer of her belief that discrimination has occurred or is occurring.   Webb v. R & B Holding Co., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998).   "It is not enough for the employee merely to complain about . . . certain behavior of co-workers and rely on the employer to infer that discrimination has occurred."   Id.   This is precisely what has occurred in this case.   Plaintiff made repeated complaints of her treatment and conduct by McClendon and Coxon starting as early as August 16, 2008, (Doc. 36, Attach. 2 at 7) but did not state her belief that racial discrimination existed until her meeting with members of the Ethics Office and HR on November 3, 2009, (id. at 2).

Plaintiff also claims that Defendants knew or should have known that she was alleging racial discrimination because of general knowledge that racial tension existed in the OR. (Id. at 49.)   Such contentions are without merit because they rely on Defendants to make the inference that Plaintiff suspected racial discrimination.

Plaintiff believes she said her workplace was a "hostile work environment" in a meeting with HR on November 25, 2008.  (Doc. 36, Attach. 2 at 10.)   Such a statement, alone and without reference to race or discrimination, does not qualify as statutorily protected expression because it does not convey a belief of racial discrimination.   The term "hostile work environment," while it may have a more specific legal meaning, is not commonly used in such a manner.  See, e.g., Starling v. Bd. Of Cnty. Comm'rs, 602 F.3d 1257, 1259 (11th Cir. 2010) (in an in-house document, employee complained of a "hostile work environment" to convey his belief that his supervisor was treating him unfairly because of personal grievances).   As Carroll stated in her deposition, "team members make those claims [of hostile work environment] a lot just because they're not getting along with other team members."  (Doc. 37, Attach. 38 at 88:1-4.)   Even if Plaintiff believed racial discrimination was at the root of her treatment, she failed

to express this belief in a manner that would substantiate a prima facie showing of retaliation. As a reasonable jury could not conclude Plaintiff had engaged in protected expression, the necessary first element of a prima facie case of retaliation for acts occurring before November 3, 2009 is not met. Consequently, Plaintiff's claims of retaliatory transfer and various other forms of retaliatory conduct occurring before this date are without merit.

## B. Plaintiff's Claim of Retaliatory Termination

This leaves only Plaintiff's termination as a possible retaliatory act. As Plaintiff certainly engaged in protected activity in her November 3, 2009 meeting and her subsequent termination clearly constitutes an adverse employment action, the analysis focuses on whether there is a causal link between this protected activity and her termination. In terms of causation, a plaintiff must show that the decision-maker was aware of the protected conduct. Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002). Further, to establish the necessary causal link, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." E.E.O.C. v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). Evidence of the employer's awareness, coupled with a close temporal

proximity between the employee's protected conduct and the adverse employment action, is sufficient circumstantial evidence to create a genuine issue of material fact with respect to the existence of a causal connection between the two. Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 799 (11th Cir. 2000); see also Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks constituted sufficient temporal proximity to demonstrate a causal nexus between protected activity and adverse employment action in an ADA case).

However, where there is unrebutted evidence that those who undertook the adverse employment action were unaware of the protected activity, temporal proximity alone is inadequate. Brungart, 231 F.3d at 799. While Defendants allege there is unrebutted evidence that they did not know of Plaintiff's statements, such is not the case. (Doc. 27 at 46.) Hattrich was the principal decision-maker in Plaintiff's termination, aided by Browne and Carroll. Although the three independantly testified that they were unaware of Plaintiff's complaints, it is not fair to say that this testimony is wholly unrebutted. There is testimony that, if true, supports the notion that Carroll likely would have known of Plaintiff's complaints. In addition, if she did know, the procedures of the department

suggest that this information would have been shared with Hattrich and Browne in an investigation. Furthermore, McClendon's earlier comments after Plaintiff's first complaint to HR, which indicated that McClendon knew Plaintiff had complained specifically about her, suggest that meetings with HR, as well as their contents, do not tend to remain secret for very long in this environment.

In addition, and most importantly, Plaintiff also alleges that Hattrich stated "[i]t's not personal. It's your peers" during the termination meeting. (Doc. 36, Attach. 2 at 30.) This statement implies that it was interpersonal conflicts, not simply job performance, that resulted in Plaintiff's termination. Such a statement, coupled with the close temporal proximity between when Plaintiff stated her belief that she was subject to racial discrimination and her termination—sixteen days—creates a genuine issue of material fact as to whether the decision-makers were aware of Plaintiff's protected activity. Consequently, for purposes of this summary judgment motion, Plaintiff has established the elements necessary for a prima facie case of retaliation.

Once a prima facie case of retaliation has been shown, the burden shifts to Defendants to "articulat[e] a legitimate non-discriminatory reason for the challenged

employment decision." McCann, 526 F.3d at 1375.   Here, Defendants state that Hattrich alone made the determination to fire Plaintiff for two reasons: improper handling of the unfrozen cryovein and a violation of the count policy. (Doc. 27 at 31.)   As there is evidence to support the finding that these actions could constitute terminable offenses, the burden shifts back to Plaintiff to show that the stated reasons are mere pretext.   See Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983)) (noting that the burden of showing a non-discriminatory reason for termination is "exceedingly light"); Turnes, 36 F.3d at 1061 ("The employer need only offer admissible evidence sufficient to raise a genuine issue of fact as to whether it had a legitimate reason for not hiring the plaintiff.").

Both the alleged improper handling of the unfrozen cryovein and the count policy violation occurred after Plaintiff's complaint to HR.[4]   Plaintiff provides evidence that she was following orders in her handling of the unfrozen cryovein.   (Doc. 36, Attach. 2 at 26-27.)

---

[4] The cryovein incident occurred later on the same day as Plaintiff's November 3, 2009 meeting.   Defendants admit that the decision to terminate Plaintiff occurred some time after the count policy incident on November 13, 2009. (Doc. 27 at 30-31.)

Further, Plaintiff provides evidence that she did not actually violate hospital count policy and Defendants hid this fact by providing insufficient evidence to the EEOC during its investigation. (Doc. 36, Attach. 2 at 27.) While it is inevitably for a jury to decide, the evidence presented by Plaintiff, if believed, calls into question whether the incidents cited by Defendants as non-discriminatory reasons for Plaintiff's termination are truly valid. If a jury were to accept this evidence, it would be entitled to find that Defendants manufactured the cryovein handling and count policy violation as pretext for terminating Plaintiff. Therefore, the Court finds there is a genuine issue of material fact that Plaintiff was terminated in retaliation for her earlier complaints of discrimination. Accordingly, Defendants are not entitled to summary judgment on this issue and Plaintiff's claims of retaliatory discharge under Title VII and § 1981 will proceed to trial against Memorial, Browne and Hattrich.

### Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims against Defendant Memorial Health University Medical Center for a hostile work environment and retaliation unrelated to her termination under Title

VII and § 1981 are **DISMISSED**.  Plaintiff's claims against Defendants Kathy Browne and Debbie Hattrich of hostile work environment and retaliation unrelated to her termination under § 1981 are **DISMISSED**.  As to Defendants Sophronia McClendon and Rhonda Coxon, Plaintiff's § 1981 claims of hostile work environment, disparate treatment and retaliation are **DISMISSED**.  However, Plaintiff's remaining claims against Defendant Memorial Health University Medical Center of disparate treatment and retaliatory termination under Title VII and § 1981, as well as her claims of disparate treatment and retaliatory termination against Kathy Browne and Debbie Hattrich under § 1981, will proceed to trial.

SO ORDERED this 30ᵗʰ day of September 2013.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA